Filed 7/27/26  L.T. v. B.S. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

| | |
|---|---|
| L.T.,<br>        Plaintiff and Respondent,<br><br>        v.<br><br>B.S.,<br>        Defendant and Appellant. | C104012<br><br>(Super. Ct. No. S-CV-0055205) |

B.S. appeals the trial court's grant of a civil harassment restraining order under Code of Civil Procedure section 527.6, protecting respondent L.T. and L.T.'s wife and stepchildren.[1]  B.S. contends that, in granting the restraining order, the court erred by considering transcripts of three communications that he argues were inadmissible under Penal Code section 632, subdivision (d), and that without those transcripts there was insufficient evidence to support the restraining order.  We conclude that B.S. has failed to demonstrate a reasonable probability of a different outcome had the three transcripts been excluded.  Accordingly, we affirm.

---

[1]  Undesignated statutory references are to the Code of Civil Procedure.

1

BACKGROUND

In May 2025, L.T. filed a verified request for a civil harassment restraining order against B.S., alleging as follows. L.T. and his former wife C.D. were engaged in an ongoing legal dispute over the custody of their daughters. In early March 2025, B.S., who had begun a relationship with C.D., approached L.T. outside of a courtroom after a hearing in the custody case. B.S. stated, " 'Just wait to see what I have coming for you' " and proceeded to yell and act aggressively toward L.T. Roughly two weeks later, B.S. emailed L.T.'s family law attorney apologizing for the perceived threat and clarifying that he was trying to warn them of forthcoming legal actions. The email advised that B.S. had filed a small claims case for alleged misconduct regarding a vehicle previously shared by L.T. and C.D. and that B.S. would be writing letters to L.T.'s and L.T.'s wife's professional licensing boards as well as to the family court judge reporting "everything that they've done." Four days later, B.S. emailed L.T.'s attorney again, asking if she would accept service of the small claims complaint on behalf of L.T. and L.T.'s wife. B.S. expressed his hope that she would accept because the alternative would be for him to "go to their house and … work and even show up to [t]he kids['] games."

On the evening of May 1 and again on the morning of May 2, 2025, the doorbell camera on the front door of L.T.'s family's home recorded an unidentified man knocking on the door. Transcripts of the recordings were attached to L.T.'s petition for a restraining order. In the May 2, profanity-laden encounter, the man urged L.T. to "[c]ome get your paperwork," as the man was going to "turn up the heat now. Your wife's work, your kids' school, your work." When L.T. did not appear at the door, the man promised to find him and embarrass him at his workplace. About one hour later, B.S. emailed L.T.'s family law attorney, calling L.T. a coward for avoiding the man whom he identified as a process server and saying that B.S. would next be going to L.T.'s wife's workplace, her children's school, or "wherever else she's gonna be" and promising to "sit in front of her house as much as and as long as I want to do it."

Later that afternoon, B.S. went to L.T.'s house. While there, he repeatedly approached the front door over the course of about 90 minutes. On each of his first five approaches, B.S. "pounded" on the door for continuous periods of one to three minutes. At one point, B.S. was pounding on the door so hard that he cut his hand. After B.S. returned to the door twice more, L.T.'s neighbors started coming outside, and one of them called the police. After another minute of B.S. pounding on L.T.'s door, police arrived. B.S. returned to his car where he spoke with an officer. L.T.'s wife arrived home soon after to speak with police, and B.S. "threw" papers at her, telling her she had been served.

Transcripts of six doorbell camera recordings of B.S. were attached to L.T.'s petition. One of the transcripts reflected B.S.'s sixth visit to the front door, when he sporadically knocked on the door over the span of four minutes while talking to someone on his cell phone; the transcript included a verbatim transcription of B.S.'s phone conversation. The next transcript reflected B.S.'s subsequent visit and contains a two-line transcription of a statement he made while again talking on his cell phone. A third transcript reflected B.S.'s brief exchange with the responding police officer while in his car at the end of L.T.'s driveway.

The petition further alleged that, the next day, B.S. approached L.T. during one of L.T.'s daughter's soccer games. B.S. walked toward L.T. while maintaining eye contact and then spit at him.

Finally, the petition described and attached an email B.S. sent to L.T.'s family law attorney two days later. Among other things, the email accused L.T. of perjury, advised that B.S. had contacted the licensing boards about L.T. and L.T.'s wife, and stated that he was "not going to stop doing everything under the legal system to stop [L.T.] accountable [*sic*]."

The petition requested a temporary restraining order against B.S. and sought personal conduct and stay-away orders protecting L.T., L.T.'s wife, L.T.'s stepsons, and

3

L.T.'s and C.D.'s daughters. The trial court granted a temporary restraining order as requested, pending an evidentiary hearing.

B.S. filed an ex parte application to vacate the temporary restraining order, which the trial court declined to resolve on an ex parte basis. The court ordered the matter to be heard in conjunction with the upcoming evidentiary hearing.

A bench trial was held at the end of May 2025. Both parties were sworn and testified, and the trial court found by clear and convincing evidence that the allegations of the petition were true. The court issued a one-year restraining order protecting the requested persons except for L.T.'s and C.D.'s daughters. As to them, the court noted that the family court in another county was actively exercising jurisdiction over them in the ongoing custody dispute. The bench trial was not reported by a court reporter.

After filing a timely notice of appeal, B.S. elected to use a settled statement as the record of the oral proceedings. (See Cal. Rules of Court, rule 8.137(b).)[2] In October 2025, B.S. filed a proposed settled statement using the Judicial Council form. The following month, the trial court issued a "Statement on Appeal" reflecting that the parties appeared and testified at trial and that the petition was granted except as to L.T.'s and C.D.'s daughters. (Some capitalization omitted.)[3]

---

[2] Undesignated rule references are to the California Rules of Court.

[3] After briefing was complete, B.S. filed a notice advising this court that the challenged restraining order expired and that the trial court denied L.T.'s request to renew or extend it. The notice argued that this appeal is nonetheless not moot in light of the order's continued collateral consequences, including impacts on ongoing family law proceedings, and requested that we retain and decide the appeal. L.T. has not filed an opposition. We grant B.S.'s request, as we conclude the controversy remains sufficiently live and would in any event exercise our discretion to consider the appeal. (See *San Diego Police Dept. v. Geoffrey S.* (2022) 86 Cal.App.5th 550, 564-565.)

DISCUSSION

I.

Section 527.6 authorizes a person who has suffered harassment to seek a temporary restraining order and, after a hearing, an injunction prohibiting such harassment. (§ 527.6, subd. (a)(1).) The statute defines " '[h]arassment' " as "unlawful violence, a credible threat of violence, or a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose. The course of conduct must be that which would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner." (§ 527.6, subd. (b)(3).) If the trial court "finds by clear and convincing evidence that unlawful harassment exists, an order shall issue prohibiting the harassment." (§ 527.6, subd. (i).) The clear and convincing standard " ' "requires a finding of high probability" ' of unlawful harassment." (*E.G. v. M.L.* (2024) 105 Cal.App.5th 688, 698.)

We review a trial court's decision to grant a restraining order for whether its express or implied findings are supported by substantial evidence. (*E.G. v. M.L.*, *supra*, 105 Cal.App.5th at pp. 698-699.) "When conducting our review, we must 'not reweigh the evidence itself' [citation], but must instead 'view the record in the light most favorable to the prevailing party below and give appropriate deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence.' " (*Id.* at p. 699.)

"A judgment or order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness." (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.) " ' "[I]f the record is inadequate for meaningful review, the appellant defaults and the decision of the trial court should be affirmed." ' [Citation.] 'Consequently, [the appellant] has the burden of providing an adequate record. [Citation.] Failure to provide an adequate record on an issue requires

5

that the issue be resolved against [the appellant].' " (*Jameson v. Desta* (2018) 5 Cal.5th 594, 609.)

"When oral proceedings are not reported or cannot be transcribed, an appellant may proceed by way of a settled statement in lieu of a reporter's transcript." (*Von Nothdurft v. Steck* (2014) 227 Cal.App.4th 524, 534; see Rule 8.137(a), (b)(1)(A).) "A settled statement is a summary of the superior court proceedings approved by the superior court." (Rule 8.137(a).) A proposed settled statement, such as the one B.S. filed in this case, must contain "a statement of the points the appellant is raising on appeal" and "a condensed narrative of the oral proceedings" relevant to the appeal. (Rule 8.137(d)(1), (2).) "The condensed narrative must include a concise factual summary of the evidence and the testimony of each witness relevant to the points that the appellant states … are being raised on appeal. … Any evidence or portion of a proceeding not included will be presumed to support the judgment or order appealed from." (Rule 8.137(d)(2)(A).)

The trial court must review the proposed settled statement and (1) if the proposed statement does not contain the material required under subdivision (d), may order the appellant to prepare a new proposed statement that complies with the rule; (2) itself make any corrections or modifications necessary to ensure that the statement accurately summarizes the evidence and testimony relevant to the points to be raised on appeal; or (3) order the appellant to prepare a statement incorporating the identified necessary corrections and modifications. (Rule 8.137(f)(3).) If the court does not order any corrections or modifications to the proposed statement, the court must promptly certify the statement. (Rule 8.137(h).)

Here, as described above, one month after B.S. filed his proposed settled statement, the trial court issued its own "Statement on Appeal," which we understand to be intended as the settled statement in this appeal. (Some capitalization omitted.) The record does not disclose whether the court had previously ordered B.S. to prepare a new proposed statement, and it is unclear whether the court's Statement on Appeal was

6

intended to make necessary corrections or modifications to B.S.'s proposed statement. (See rule 8.137(f)(3)(A), (B)(i).) In any event, neither the proposed settled statement nor the Statement on Appeal contains any factual summary of the evidence and testimony presented at trial.

## II.

B.S. first contends that the restraining order must be vacated because it was based on the transcripts of the three doorbell camera recordings described above, which, in his view, should have been excluded under Penal Code section 632, subdivision (d). "Under section 632, the intentional electronic recording of a confidential communication without the consent or knowledge of all parties is illegal, and the recording is inadmissible—with certain exceptions—in a judicial proceeding." (*Br. C. v. Be. C.* (2024) 101 Cal.App.5th 259, 265, citing Pen. Code, § 632, subds. (a) & (d).) B.S. asserts that the two transcripts of his cell phone conversations and the transcript of his exchange with the police officer were of nonconsensual recordings of his confidential communications with third parties.

Given the sparse appellate record, it is unclear whether these transcripts were technically admitted as evidence or otherwise considered at the bench trial. The minutes of the trial do not reflect what exhibits were or were not admitted. And the trial court's Statement on Appeal reflects only that "[t]he parties were sworn and testified."

Even if we assume that the transcripts were erroneously admitted or considered, B.S. fails to demonstrate any prejudice. An evidentiary ruling, even if erroneous, is not ground for reversing an order or judgment absent a miscarriage of justice. (Cal. Const., art. VI, § 13; *People v. Watson* (1956) 46 Cal.2d 818, 836; *Christ v. Schwartz* (2016) 2 Cal.App.5th 440, 447.) "[A] 'miscarriage of justice' should be declared only when the court, 'after an examination of the entire cause, including the evidence,' is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*Watson*, at p. 836; see *People v. Nakai* (2010) 183 Cal.App.4th 499, 519 [in determining prejudice from Pen. Code, § 632

7

error, courts "must decide if it is reasonably probable that a result more favorable to the [appellant] would have been reached in the absence of the error"].)  It is the appellant's burden to show that reasonable probability.  (*Christ*, at p. 447.)

Here, we lack an adequate record of what testimony and other evidence were heard at trial to permit an assessment of whether it is reasonably probable the trial court would not have granted the restraining order without the three transcripts at issue.  The court's Statement on Appeal recites only that the parties appeared, that they gave unspecified testimony, and that the court found the petition's allegations true by clear and convincing evidence.  B.S.'s proposed settled statement likewise did not provide a "concise factual summary of the evidence and the testimony of each witness" relevant to the points raised on appeal.  (Rule 8.137(d)(2)(A).)  Indeed, his proposed settled statement said that neither party testified at trial and that there was no relevant testimony by nonparty witnesses.  Because the trial court's Statement on Appeal said that testimony was in fact given at trial—but that testimony was not summarized in either that document or B.S.'s proposed settled statement—we must presume that the undescribed testimony would have supported the issuance of the restraining order.  (Rule 8.137(d)(2)(A).)  And absent any description of the testimony or evidence offered at trial, we cannot accept B.S.'s contention that the challenged transcripts "supplied the core content" evidencing his harassment of L.T.  As B.S. has failed to demonstrate prejudice from any error in considering the transcripts, reversal on that ground is unwarranted.

### III.

The same gaps in the record also defeat B.S.'s contention that, without the objectionable transcripts, there was insufficient evidence of harassment to support the restraining order.  Again, "[a]ny evidence or portion of a proceeding not included [in a settled statement's required factual narrative] will be presumed to support the judgment or order appealed from."  (Rule 8.137(d)(2)(A).)  And more fundamentally, failure to provide an adequate record of the evidence adduced at trial forecloses a claim that the

8

resulting order was not supported by substantial evidence. (*Jameson v. Desta*, *supra*, 5 Cal.5th at p. 609.)

B.S.'s proposed settled statement says that the trial court relied primarily on the declaration that L.T. submitted in support of his petition. Even assuming that is true, B.S. has not shown how that evidence was insufficient to support the restraining order, even without the transcripts of the disputed recordings.

B.S. first argues that there was insufficient evidence of "harassment" under section 527.6 because the petition was based on his conduct on a single day, rather than a " '[c]ourse of conduct' " as contemplated by the statute. (§ 527.6, subd. (b)(1).) The declaration in support of the petition, on its face, contradicts B.S.'s factual premise in that it describes his conduct over a series of days, not just one. Further, B.S.'s limited briefing on this question does not persuade us that his behavior toward L.T., taken as a whole, could not amount to a course of conduct within the meaning of section 527.6. Under the statute, a " '[c]ourse of conduct' is a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose." (§ 527.6, subd. (b)(1); see also *id.* [conduct may include "following or stalking an individual, making harassing telephone calls to an individual, or sending harassing correspondence to an individual by any means"].) "Beyond the requirement that there be more than one act to qualify as a ' "[c]ourse of conduct" ' [citation], the statute does not prescribe the necessary number or frequency of the acts required for a finding of course of conduct harassment. Moreover, in deciding whether to issue [a restraining] order, the trial court views the evidence as a whole, including incidents that, if viewed in isolation, might seem trivial, but cumulatively could constitute a harassing course of conduct." (*E.G. v. M.L.*, *supra*, 105 Cal.App.5th at pp. 699-700.) Here, B.S. engaged in multiple acts of aggression toward L.T., both at his front door and on separate dates before and after. Two months before visiting L.T.'s house, B.S. confronted him in a sufficiently intimidating fashion that B.S. felt it necessary to later apologize and attempt to clarify his

9

intentions.  Then, during his first few visits to L.T.'s front door, he pounded on the door for long periods and with such force that at one point he cut his hand.  And the next day, B.S. approached L.T. at one of L.T.'s children's soccer games and spit at him.  That was sufficient to show a harassing course of conduct under the statute.

Next, B.S. argues that his behavior described in the petition could not have amounted to a harassing course of conduct because his actions were in pursuit of the "legitimate purpose" (§ 527.6, subd. (b)(3)) of serving court papers.  As discussed above, one of the requirements for conduct to qualify as harassment under section 527.6 is that it "serve[] no legitimate purpose."  (§ 527.6, subd. (b)(3).)  While attempting service of process itself would qualify as legitimate, there is substantial evidence to support the trial court's implied finding that there was no proper purpose to B.S.'s aggressive behavior, which was wholly unnecessary to effectuate service.  (See *Harris v. Stampolis* (2016) 248 Cal.App.4th 484, 488-489, 499 [rejecting father's claim of legitimate purpose of picking up son from school because father's act of picking up his son was not the credible threat of violence; rather, the credible threat was his aggressive behavior toward school principal during pick-up].)

Finally, B.S. requests reversal under Evidence Code section 623, which codifies the doctrine of equitable estoppel.  (*Minish v. Hanuman Fellowship* (2013) 214 Cal.App.4th 437, 459.)  But he offers no explanation of how the elements of that doctrine were satisfied in this case, and "[m]ere suggestions of error without supporting argument or authority other than general abstract principles do not properly present grounds for appellate review."  (*Department of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd.* (2002) 100 Cal.App.4th 1066, 1078.)

10

DISPOSITION

The civil harassment restraining order is affirmed.  L.T. shall recover his costs on appeal.  (Rule 8.278(a)(1), (2).)

/s/
FEINBERG, J.

We concur:

/s/
EARL, P. J.

/s/
RENNER, J.

11